175 N.J. Super. 1 (1979)
417 A.2d 547
VIRGINIA GUERRIERO, PLAINTIFF,
v.
OLAF PALMER AND CARL GERHARD, INDIVIDUALLY AND D/B/A PALMER AND GERHARD, AND THE TOWNSHIP OF MILLBURN, DEFENDANTS.
Superior Court of New Jersey, Law Division Union County.
Decided December 5, 1979.
*2 Donald T. Di Francesco for plaintiff (Appezzato & Di Francesco, attorneys).
John S. Fitzpatrick for defendant Township of Millburn (Haggerty & Donohue, attorneys).
S. Robert Allcorn for defendants Palmer and Gerhard (Rabner & Allcorn, attorneys).
*3 BRODY, J.S.C.
Plaintiff tripped and fell in 1977 on an uneven public sidewalk and brought this negligence action to recover for her injuries. Defendants Palmer and Gerhard owned the abutting property which is located in defendant Township of Millburn. All defendants move for summary judgment.
As stated in her answer to an interrogatory, plaintiff's theory of recovery is that defendants were negligent in that they "failed to maintain, supervise and inspect the sidewalk and allowed same to remain in a state of disrepair causing a dangerous and hazardous tripping condition." No evidence has been presented that any defendant or predecessor in title actively did anything to bring about the condition complained of.
Were I to apply recognized common-law principles, I would grant both motions. The public sidewalk and street constitute the public way, ordinarily an easement over the property of the abutting property owner. The duty of maintaining the safety of the sidewalk is on the public entity, in this case Millburn; there is no duty on the abutting property owner unless he or a specified predecessor in title negligently constructed or repaired the sidewalk or used it in a way that rendered it unsafe. Yanhko v. Fane, 70 N.J. 528, 533-534 (1976). The public entity's duty at common law was nullified by a shield of sovereign immunity which absolutely protected the State and protected counties and municipalities except when their "active wrongdoing" created the hazard. Milstrey v. Hackensack, 6 N.J. 400 (1951).
These principles defeat plaintiff's claim against the abutting property owners Palmer and Gerhard so their motion must be granted. Yanhko v. Fane, supra. However, expressly left unresolved in Yanhko and raised by Millburn's motion is the effect the Tort Claims Act, N.J.S.A. 59:1-1 et seq. may have in reshaping sovereign immunity so as to expose a municipality to liability for failing to repair a dangerous public sidewalk.
The Tort Claims Act is the Legislature's response to Willis v. Conservation & Econ. Develop. Dep't, 55 N.J. 534 (1970), which *4 declared an end to the common-law immunity the State enjoyed for no reason other than its status as sovereign. Simultaneously, Willis extended to the State the protection of categorical common-law immunities which for reasons of sound public policy had been made available to counties and municipalities. Without limiting the ultimate development of those immunities, the court emphasized that "the State will not be held liable for legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial cast, nor generally with respect to decisions calling for the exercise of official judgment or discretion." Id. at 540-541.
Willis proceeded from an assumption of liability subject to any categorical immunity. By contrast, the act proceeds from an assumption of immunity subject to any liability provided in the act. English v. Newark Housing Auth., 138 N.J. Super. 425, 428-29 (App.Div. 1976). However, the act then doubles back somewhat by subjecting any liability to the terms of any relevant categorical immunity provided in the act or, if not in the act, as may be developed at common law. This two-step approach is set out in N.J.S.A. 59:2-1 which reads in pertinent part:
a. Except as otherwise provided by this act, a public entity is not liable for an injury....
b. Any liability of a public entity established by this act is subject to any immunity of the public entity[1]....
An exception cannot survive being made subject to its own rule. Therefore, the words "any immunity" in (b) must refer to any statutory or common-law categorical immunity, not the former broad common-law immunity re-established in (a). The *5 Legislature declared its intent to mitigate, not perpetuate, the common-law rule when it recognized "the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity." N.J.S.A. 59:1-2. Thus, simply because a municipality was immune from suit at common law for failing to repair a dangerous sidewalk does not mean that it remains immune under the act.
To proceed under the act, the first step is to determine if it provides a relevant category of liability. If it does, the assumption of immunity disappears and the next step is to determine if there is any relevant category of immunity in the act or a relevant common-law category not in the act that modifies or nullifies the liability provision.
Chapter 4 of the act provides categories of liability relating to the condition of public property. N.J.S.A. 59:4-2, as it is relevant here, provides that a public entity is liable for a reasonably foreseeable kind of injury proximately caused by "a condition of its property" if the plaintiff establishes that the public entity had actual or constructive notice of a dangerous condition that created the risk.
N.J.S.A. 59:4-1 defines "public property," in pertinent part, as "real or personal property owned or controlled by the public entity...." In Whaley v. Hudson Cty., 146 N.J. Super. 76 (Law Div. 1976), the court held that a county road was "public property" and so allowed a personal-injury negligence action to proceed against the county. As to sidewalks, the following language in Yanhko recognizes sufficient public entity ownership or control to constitute them "public property":
Presumably, defendants' [abutting property owners] title goes to the middle of the abutting street, subject to the public easement of vehicular passage in the street and of pedestrian passage on the sidewalk, with neither of which defendants are entitled to interfere.... In legal contemplation, the easement of public passage renders the sidewalk an integral part of the public highway ...
... The unrestrictable right of passage on the highway belongs to the public. In principle, therefore, a remedy for injury to a pedestrian caused by improper maintenance thereof should be subsumed under the heading of public liability. It should be for the Legislature as representative of the public at large to declare or regulate such liability. Yanhko v. Fane, supra [70 N.J. at 534].
*6 N.J.S.A. 59:4-2 renders a public entity liable for a dangerous sidewalk, subject to any immunity.
Millburn contends that § 2-3(d) and § 4-2 provide relevant categorical immunities. I agree. However, I do not have sufficient evidence to invoke either as a summary bar to this action.
N.J.S.A. 59:2-3 codifies and thereby preempts the common-law discretionary-activities immunities preserved in Willis. Subsection (d) reads in part:
A public entity is not liable for the exercise of discretion when, in the face of competing demands, it determines whether and how to utilize or apply existing resources ... unless a court concludes that the determination of the public entity was palpably unreasonable.
Plaintiff bears a heavy burden to persuade a court that Millburn's failure to allocate resources to repair dangerous sidewalks was "palpably unreasonable." Courts will not be quick to second-guess an exercise of such discretion in this context. Mitchell v. Trenton, 163 N.J. Super. 287, 292 (App.Div. 1978). But Millburn must come forward with some evidence beyond the inference that repairing this sidewalk was an expense it chose not to incur. In Mitchell, for instance, where the city was defending an action based on a dangerous curb, its Director of Public Works testified at trial of the widespread disrepair of curbs in the city, the limited amount in his budget for street repairs, and how those resources were allocated to other pressing needs. The trial judge's dismissal based on that testimony was affirmed.
N.J.S.A. 59:4-2, while imposing liability on a public entity for a dangerous condition of its public property, also provides its own discretionary-activities immunity:
Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
"Protect against" is defined in § 4-1(b):
"Protect against" includes repairing, remedying or correcting a dangerous condition, providing safeguards against a dangerous condition, or warning of a dangerous condition.
Millburn contends that its adoption of a sidewalk ordinance in 1951 is a "not palpably unreasonable" action taken to *7 "protect against" the dangerous condition of the sidewalk. There is no need to decide whether this immunity will arise from the adoption alone of an ordinance requiring an abutting property owner to keep the sidewalk in repair. It is enough to say that Millburn's ordinance[2] does not do even that. It simply makes it an offense for an abutting property owner to fail to repair the sidewalk after receiving notice to do so from the governing body. I have no evidence that such notices were ever given before the accident to any abutting property owners anywhere in the township; or if they were, of how the governing body determined when to give them.
*8 Summary judgment is granted in favor of defendants Olaf Palmer and Carl Gerhard. Defendant Millburn's motion for summary judgment is denied without prejudicing its right to move again for summary judgment on the basis of evidence or a lack of evidence directed to the absence or presence of the elements necessary to establish public entity liability or immunity.
NOTES
[1] Subsection 815(b), the corresponding subsection of the California Tort Claim Act, Cal. Gov't. Code § 810 et seq., after which New Jersey's was modeled, reads "... is subject to any immunity of the public entity provided by statute." The New Jersey Legislature deleted the words "provided by statute" to allow for the continuing development of categorical common-law immunities. As stated in the Legislative Comments accompanying the act, "Subsection (b) is intended to insure that any immunity provisions provided in the act or by common law will prevail over the liability provisions." (Emphasis supplied)
[2] Sec. 21-2-3.

Whenever the pavement or surface of any public sidewalk or portion thereof upon or along a public street or highway in the township shall be found to be broken, disintegrated, uneven or otherwise defective to such an extent that it would be likely to cause a pedestrian to trip or fall in passing along the same, and such condition shall be complained of to, or discovered by the supervisor of public works of the township, he shall make, or cause to be made, an inspection of the sidewalk or portion thereof, and shall report the condition thereof by him so found, to the township committee of the township, with his recommendations for the correction or elimination of such condition. If such condition shall be found to constitute a hazard to pedestrians' use of the sidewalk or portion thereof, and may be eliminated by repair or reconstruction, the township committee may cause written notice to be given to the owner of all real estate abutting upon the sidewalk or portion thereof so found to be dangerous or hazardous and to require reconstruction or repair, requiring such owner to reconstruct or repair the sidewalk or portion thereof, within thirty days after the service of such notice, in the manner, to the extent and in accordance with the specifications to be set forth in the notice. Such notice shall also contain a description of the property abutting upon such sidewalk or portion thereof so required to be reconstructed or repaired, which description shall be sufficient to identify such property. (R.O. 1951, § 17.16.)
Sec. 21-2-4.
An owner of real estate abutting upon a public sidewalk who, after receipt of notice to reconstruct or repair the same as provided in section 21-2-3, shall neglect or refuse to comply with such notice, and shall continue to use and maintain such sidewalk, as an appurtenance to his property, in a condition constituting a hazard to the safety of pedestrians having lawful occasion to use such sidewalk, shall be deemed to have violated the provisions of this article and, upon conviction thereof, shall be punished as provided by section 1-1-11. (R.O. 1951, § 17.17.)