734 A.2d 762

ANGELA NORRIS AND GEORGE NORRIS, PLAINTIFFS–RESPON-
DENTS, v. BOROUGH OF LEONIA, DEFENDANT–APPEL-
LANT, AND JOHN DOE (SAID NAME BEING FICTITIOUS AND
UNKNOWN), JOHN ROE (SAID NAME BEING FICTITIOUS
AND UNKNOWN), ROE DOE (SAID NAME BEING FICTITIOUS
AND UNKNOWN), DEFENDANTS.

Argued March 15, 1999—Decided July 26, 1999.

428

*John J. Robertelli* argued the cause for appellant (*Hanrahan & Robertelli,* attorneys; *Mr. Robertelli* and *Christine M. Vanek,* on the briefs).

*Lewis P. Sengstacke* argued the cause for respondents (*Davis, Saperstein & Salomon,* attorneys).

The opinion of the Court was delivered by

HANDLER, J.

This matter arises from injuries sustained by a pedestrian when a curb gave way as she stepped onto it, causing her to fall to the ground. The issue in this appeal is whether a municipality may be held liable for the negligent maintenance of the curb. In addressing that issue, we must consider whether the common law immunity historically accorded municipalities for sidewalk wear and tear absolves a public entity from negligent curb maintenance, or whether negligent curb maintenance is subject to the standard of liability applicable to a dangerous condition of improved public property under the Tort Claims Act.

I

On September 3, 1995, plaintiff, Angela Norris, sustained severe injuries when the curb in front of her home in the Borough of Leonia collapsed as she stepped onto it, causing her to fall into the street. Plaintiff required extensive physical therapy, incurring medical bills in excess of $17,000.

Plaintiff and her husband, George Norris, filed a complaint against defendant, Borough of Leonia, under the Tort Claims Act, *N.J.S.A.* 59:1–1 to 12–3 (TCA or Act). They alleged that "due to

the careless, reckless and negligent operation, supervision, management and/or maintenance of the curbing ... a palpably unreasonable and dangerous condition was created causing plaintiff ... severe personal injuries." Defendant moved for summary judgment, asserting common law immunity for the natural deterioration and/or defective condition of the curb, and statutory immunity under the TCA, specifically relying on *N.J.S.A.* 59:2-6, providing immunity for failure to make an inspection or make an inadequate or negligent inspection of its property, and *N.J.S.A.* 59:2-3, establishing immunity for its exercise of judgment or discretion relative to the curb in question. Moreover, defendant argued that plaintiffs failed to establish *prima facie* proof of the existence of a dangerous condition, required for municipal liability under *N.J.S.A.* 59:4-2, and actual or constructive notice of the dangerous condition pursuant to *N.J.S.A.* 59:4-3.

The trial court granted summary judgment in favor of defendant. The court concluded that a municipality is entitled to a common law immunity for "the natural deterioration of sidewalks and curbs" and, further, that defendant was entitled to an immunity defense under the TCA to a claim based on any alleged lack of inspection, and that plaintiffs failed to establish a basis for liability under the Act.

Plaintiffs appealed, and the Appellate Division, in an unpublished *per curiam* opinion, reversed the trial court's order granting defendant's motion for summary judgment. The Appellate Division concluded that if the curb were part of the sidewalk and otherwise subject to municipal control, municipalities, like commercial landowners, no longer retained the common law immunity for the general wear and tear of sidewalks. The Appellate Division also rejected an immunity defense relating to inspections. The court further determined that a curb, whether a part of the street or the sidewalk, if under municipal control, would be subject to the liability standard applicable to public property under the TCA. Accordingly, the Appellate Division remanded the matter for trial.

Defendant filed a petition for certification, which this Court granted. 156 *N.J.* 428, 719 *A.*2d 1026 (1998).

## II

We consider initially defendant's claim, asserted by way of defense, that even if the curb is considered part of the sidewalk and otherwise subject to municipal control, the municipality is entitled to the common law immunity for the deterioration of sidewalks, including curbs, that is accorded private landowners and municipalities. The Appellate Division rejected that defense, concluding that, like a commercial landowner, a municipality no longer retained common law immunity for the general wear and tear of sidewalks. The applicability of that immunity becomes relevant under the TCA, which provides:

> Any liability of a public entity established by this act is subject to any immunity of the public entity and is subject to any defenses that would be available to the public entity if it were a private person.
>
> [*N.J.S.A.* 59:2–1(b).]

## A.

The rule that an adjoining property owner is not liable for injuries sustained as a result of the natural deterioration of an abutting sidewalk has a long history. *See Moskowitz v. Herman,* 16 *N.J.* 223, 225, 108 *A.*2d 426 (citing *Rupp v. Burgess,* 70 *N.J.L.* 7, 56 *A.* 166 (Sup.Ct.1903); *Rose v. Slough,* 92 *N.J.L.* 233, 104 *A.* 194 (E. & A.1918); *Murphy v. Fair Oaks Sanatorium,* 127 *N.J.L.* 255, 21 *A.*2d 806 (E. & A.1941)). The rule stems from English common law, which provided that " 'the parish at large is prima facie bound to repair all highways lying within it.' " *Stewart v. 104 Wallace Street, Inc.,* 87 *N.J.* 146, 153–54, 432 *A.*2d 881 (1981) (quoting *The King v. Inhabitants of Sheffield,* 2 *T.R.* 106, 111, 100 *E.R.* 58, 61 (K.B.1787)). Influenced by this reasoning, early New Jersey cases placed the primary responsibility for the maintenance of sidewalks on the government. *Ibid.* (citing *Mount v. Recka,* 35 *N.J.Super.* 374, 380, 114 *A.*2d 289 (App.Div.1955)). A public entity's duty to maintain sidewalks at common law, howev-

er, was in turn nullified by the general shield of sovereign immunity, which absolutely absolved it from any liability for dangerous conditions on public property, except when its own "active wrongdoing" or "positive misfeasance" created the hazard. *See Milstrey v. City of Hackensack,* 6 *N.J.* 400, 408, 79 *A.*2d 37 (1951).

### 1.

The common law sidewalk immunity became a frequent and recurring object of criticism for much of this century, particularly in its application to private commercial landowners. Rarely, if ever, has a tort doctrine been "as vigorously and continuously challenged for as long a period of time and by as many Justices of [this] Court as the doctrine [of immunity for a commercial land-owner's negligent failure to maintain abutting sidewalks.]" *Cogliati v. Ecco High Frequency Corp.,* 181 *N.J.Super.* 579, 584, 439 *A.*2d 91 (App.Div.1981), *aff'd,* 92 *N.J.* 402, 456 *A.*2d 524 (1983).

In *Moskowitz, supra,* the rule was first challenged by Justice Jacobs, joined by Chief Justice Vanderbilt, who wrote that "[t]he [ ] doctrine is pregnant with seeds of gross injustice for it tends to immunize the wrongdoer whose flagrant neglect of duty has caused injury to an innocent party who is left with recourse against no one." 16 *N.J.* at 228, 108 *A.*2d 426 (Jacobs, J., dissenting). Justice Jacobs reasoned that when a defendant's building is used for commercial purposes, the adjacent sidewalk is used by business patrons and is thus "directly beneficial to the operation of the business." *Id.* at 230, 108 *A.*2d 426. Noting that the responsibility for constructing and maintaining sidewalks was no longer the sole province of municipalities, but rather, was increasingly statutorily imposed on abutting landowners, Justice Jacobs wrote:

> Much may be said for the position that, in the light of current urban conditions, landowners (at least those engaged in commercial activity) should now be held accountable ... for damages resulting from their failure to discharge their statutory duty of maintaining the sidewalks in front of their premises.
>
> [*Id.* at 228, 108 *A.*2d 426.]

Nearly twenty years later, Justice Proctor, joined by Justice Jacobs, vigorously attacked the continued viability of the common law rule as "manifestly unjust." *Murray v. Michalak*, 58 *N.J.* 220, 223, 276 *A.*2d 857 (Proctor, J., dissenting). Although indicating that he would place a duty to maintain abutting sidewalks on all property owners, Justice Proctor conceded that "[t]he Court [ ] need go no further than to hold that such a duty of repair exists for the owner of commercial premises[,]" *id.* at 225, 276 *A.*2d 857, writing:

> "For the protection of its patrons, every commercial establishment must maintain its premises, including means of ingress and egress, in reasonably safe condition (citing cases). And although the paved sidewalks fronting a commercial establishment are primarily for the use of the public generally, their condition is so beneficially related to the operation of the business that the unrestricted legal duty of maintaining them in good repair might, arguably, be placed on it."
>
> [*Ibid.* (quoting *Krug v. Wanner*, 28 *N.J.* 174, 179–80, 145 *A.*2d 612 (1958)).]

In *Yanhko v. Fane*, 70 *N.J.* 528, 362 *A.*2d 1 (1976), Justice Pashman, joined by Justice Schreiber, dissented from the majority's decision to reaffirm the common law sidewalk immunity for private landowners. *Id.* at 537, 362 *A.*2d 1 (Pashman, J., dissenting). The majority reasoned that it would not be fair to hold an abutting landowner liable for sidewalk maintenance when such an owner "makes no use of the sidewalk other than pedestrian passage thereover in common with the public generally." *Id.* at 533, 362 *A.*2d 1. Justice Pashman disagreed, noting that commercial landowners enjoy numerous rights in respect of abutting public easements, and therefore "there is an obvious distinction" between those landowners and "pedestrians who may simply use the public easement." *Id.* at 541, 362 *A.*2d 1 (Pashman, J., dissenting). The dissent then analogized the imposition of liability on commercial landowners for the negligent maintenance of abutting sidewalks to the liability already imposed in respect of their business establishments:

> If it is conceded that plaintiff would have had a claim against defendant had she been actually injured within defendants' store, it makes little sense to reach a contrary result where she sustains her injury elsewhere on the business property of the defendant-landowner. If the landowners were aware of the dangerous condition of the sidewalk, and failed to take the necessary action to correct it,

> plaintiffs' right to bring suit should not depend on the fortuitous misfortune of where the injury occurred on defendants' property.
>
> [*Id.* at 543–44, 362 *A.*2d 1.]

These criticisms of the common law rule were ultimately acknowledged and accepted in *Stewart, supra,* wherein the Court "overrule[d] *Yanhko* and [held] that a plaintiff has a cause of action against a commercial property owner for injuries sustained on a deteriorated sidewalk abutting that commercial property when that owner negligently fails to maintain the sidewalk in reasonably good condition." 87 *N.J.* at 149, 432 *A.*2d 881. Noting that responsibility for the provision and maintenance of sidewalks had evolved from origins that rested exclusively on municipalities, to a delegation of responsibility between municipalities and owners of abutting commercial lands, the Court concluded that "the present 'no liability' rule is derived from conditions that no longer exist and is not responsive to current urban conditions." *Id.* at 155–56, 432 *A.*2d 881. Creating potential liability for commercial landowners, the Court wrote, will

> provide a remedy to many innocent plaintiffs for injuries caused by improper maintenance of sidewalks. As a corollary, it will give owners of abutting commercial property an incentive to keep their sidewalks in proper repair ... [and] will eliminate the arbitrariness of the old rule ... [since] injured persons will be able to recover for injuries sustained just outside a store as well as those sustained within it.
>
> [*Id.* at 157–58, 432 *A.*2d 881.]

The Court further explained that this exception was warranted because commercial landowners retained considerable interest in, and especially valuable rights to use, abutting sidewalks, including

> a cause of action to prevent obstruction of the public's view of [the commercial property] from the sidewalk ... 'use of the adjacent sidewalk for stoops ... and other domestic or trade conveniences' ... [and] easy access to their premises and increase[d][ ] value of their property.
>
> [*Id.* at 151–52, 432 *A.*2d 881 (citations omitted).]

The Court therefore imposed a duty to maintain a sidewalk in a reasonably good condition on owners of commercial property, while retaining the common law sidewalk immunity for residential landowners. *Id.* at 159, 432 *A.*2d 881.[1]

---

[1] The *Stewart* Court expressly declined to decide whether the rule should be modified in respect of residential landowners:

## 2.

Following the adoption of the TCA, courts were confronted with whether to continue to apply the common law immunity for the wear and tear of sidewalks to municipalities that was recognized in *Milstrey, supra,* 6 *N.J.* at 408, 79 *A.*2d 37. The TCA cloaks a municipality with the common law immunities available to public entities prior to the Act, as well as with any defenses applicable to private persons. *N.J.S.A.* 59:2–1(b). Thus, a municipality under the TCA is conceivably immune from liability for negligently maintained sidewalks for which it is otherwise responsible by virtue of the common law immunity accorded municipalities.

The trial court in this case found that *Yanhko* and *Stewart, supra,* as well as *Mitchell v. City of Trenton,* 163 *N.J.Super.* 287, 394 *A.*2d 886 (App.Div.1978), supported the continuation of municipal immunity after the enactment of the TCA. The Appellate Division determined that reliance on those authorities was misplaced. It observed that *Yanhko* stood for the proposition that absent evidence of negligent construction or repair, a landowner is not liable for the maintenance of a sidewalk because such responsibility reposes in the government. The appellate court further noted, however, that *Yanhko* specifically stated that the issue of the city's liability was not raised on appeal.

In *Mitchell, supra,* the court relied on *Yanhko* and *N.J.S.A.* 59:2–1(b) to hold that the common law sidewalk immunity for private landowners is applicable to municipalities. 163 *N.J.Super.* at 290–91, 394 *A.*2d 886. In *Mitchell,* as in this case, the plaintiff sustained injuries when she fell as a result of a broken curb, and alleged that the municipality was liable for damages because it had negligently maintained the curb. *Id.* at 289, 394 *A.*2d 886. The

---

We do not reach the question of whether the same duty should be imposed on owners of residential property or whether the policy considerations underlying the impositions of a duty on commercial property owners apply to residential property owners. We note, however, that the law of sidewalk liability is an appropriate subject for reconsideration by the Legislature. [*Id.* at 159 n. 6, 432 *A.*2d 881.]

court emphasized that the plaintiff's claims for damages were subject not only to the common law immunity continued by the TCA, "but also to any defenses available to a private person at common law." *Id.* at 291, 394 *A.*2d 886 (citing *N.J.S.A.* 59:2–1(b)). Therefore, the court concluded, because abutting property owners enjoyed an immunity defense regarding injuries sustained as a result of the condition of their adjoining sidewalks, such a defense was available to the city under the TCA. *Ibid.*

The Appellate Division pointed out that *Mitchell* was decided before this Court's decision to limit commercial landowner sidewalk immunity in *Stewart, supra,* 87 *N.J.* 146, 432 *A.*2d 881. Although *Stewart* addressed only commercial landowner liability, the appellate court here asserted that it applied to municipalities as well, reasoning that because *Stewart* stated that various provisions of the TCA "might be relevant to a determination" of municipal liability, "the Court appeared to assume that municipal liability corresponded to that of the commercial landowner, except to the extent its liability was restricted by specific provisions of the Act."

One year after *Mitchell* was decided, the Law Division considered the question of municipal liability for negligently maintained sidewalks and reached a contrary result. *Guerriero v. Palmer,* 175 *N.J.Super.* 1, 417 *A.*2d 547 (1979). Judge Brody determined that blanket common law immunity for sidewalk defects caused by wear and tear did not survive the TCA. Unlike the *Mitchell* court, Judge Brody focused on that part of *N.J.S.A.* 59:1–2b providing that liability is subject to "any immunity of the public entity." *Id.* at 3–4, 417 *A.*2d 547. The court observed that the words "any immunity" in this context "must refer to any statutory or common-law categorical immunity, not the former broad common-law [sovereign] immunity." *Ibid.* The court reasoned:

> The Legislature declared its intent to mitigate, not perpetuate, the common-law rule when it recognized "the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity." *N.J.S.A.* 59:1–2. Thus, simply because a municipality was immune from suit at

common law for failing to repair a dangerous sidewalk does not mean that it remains immune under the act.

[*Id.* at 4–5, 417 *A.*2d 547.]

The issue of municipal liability for injuries caused by a defective sidewalk has not been expressly decided by this Court. In *Yanhko,* the matter of the city's liability was not raised by the parties on appeal and the accident occurred before the effective date of the TCA; consequently, the impact of the Act was not considered either in respect of the asserted liability of the commercial defendants, or of the city, which was joined as a defendant and later dismissed on motion. 70 *N.J.* at 534 n. 1, 362 *A.*2d 1.

Similarly, in *Stewart,* the Court did not have occasion to determine whether the common law sidewalk immunity applicable to private property owners was equally applicable to municipalities because "[t]he question of the possible liability of a municipality for injuries sustained on deteriorated sidewalks [was] not before [it]." 87 *N.J.* at 155 n. 3, 432 *A.*2d 881. Nevertheless, the Court observed that "[n]umerous provisions of the Tort Claims Act, *N.J.S.A.* 59:1–1 *et seq.,* enacted in 1972, might be relevant to a determination of this issue in a given case." *Ibid.*

In the wake of *Stewart,* New Jersey courts have wrestled with whether the duty to maintain sidewalks ought to be imposed on municipalities. *Compare Christmas v. City of Newark,* 216 *N.J.Super.* 393, 400, 523 *A.*2d 1094 (App.Div.) ("[W]e do not interpret the court's holding in *Stewart* to mean that liability is shared by municipalities and commercial landowners but rather, the duty to maintain sidewalks is limited solely to owners of commercial property."), *certif. denied,* 108 *N.J.* 193, 528 *A.*2d 19 (1987) *with Levin v. Devoe,* 221 *N.J.Super.* 61, 64 n. 1, 533 *A.*2d 977 (App.Div.1987) ("[w]e respectfully disagree with the holding in *Christmas* . . . that *Stewart* established an absolute municipal immunity for deteriorated sidewalks.").

## B.

Although the common law municipal sidewalk immunity may have survived the enactment of the TCA in some form, it

does not follow that *N.J.S.A.* 59:2–1 permanently fixed that immunity as it then existed at common law. Even in cases where a common law immunity has been incorporated into or codified by statute, it remains subject to judicial modification. *State v. Culver*, 23 *N.J.* 495, 129 *A.*2d 715 (1957); *see Renz v. Penn Central Corp.*, 87 *N.J.* 437, 435 *A.*2d 540 (1981). The TCA does not expressly incorporate the static standards of existing immunities. Instead, the Act continues the existence of such immunities as common law doctrines, which are subject to judicial evaluation in light of changing circumstances. *See Chatman v. Hall*, 128 *N.J.* 394, 414 n. 3, 608 *A.*2d 263 (1992) (noting that "with regard to the liability and immunity of municipalities, the Legislature incorporated the evolving common-law principles").

Comments to various sections of the TCA support the conclusion that the common law sidewalk immunity doctrine retains its inherent flexibility and amenability to change. The Comment to *N.J.S.A.* 59:2–1(b) provides "[i]t is anticipated that the Courts will realistically interpret both the statutory and common law immunities in order to effectuate their intended scope." The Comment to the public property liability section, *N.J.S.A.* 59:4–2, adds that "[i]t is anticipated that this section will be developed to the extent possible in accordance with common law principles of landowner liability." Moreover, the Comment to the Act's general liability provision, *N.J.S.A.* 59:2–2, observes that "[w]hile the general approach of this act is immunity unless liability, this section provides a flexible liability provision which will permit the courts to adapt the principles established in this act to the particular circumstances of the cases coming before them." These Comments evidence a legislative intent to allow modification of common law immunities where their continuing application would be inconsistent with the principles underpinning the TCA and the basic reasons that underlay their creation.

We have long recognized the inherent mutability of common law immunities and have not hesitated to abandon or restrict them when as a matter of sound public policy they have outlived their

usefulness. *See, e.g., Weinberg v. Dinger,* 106 *N.J.* 469, 524 *A.*2d 366 (1987); *Foldi v. Jeffries,* 93 *N.J.* 533, 461 *A.*2d 1145 (1983); *Merenoff v. Merenoff,* 76 *N.J.* 535, 388 *A.*2d 951 (1978); *France v. A.P.A. Trans. Corp.,* 56 *N.J.* 500, 267 *A.*2d 490 (1970); *Willis v. Department of Conservation & Economic Dev.,* 55 *N.J.* 534, 264 *A.*2d 34 (1970); *Collopy v. Newark Eye & Ear Infirmary,* 27 *N.J.* 29, 141 *A.*2d 276 (1958). The common law sidewalk immunity has been construed as a doctrine that is not fixed and immobile, but rather one that is amenable to modification in light of changing conditions. *Stewart, supra,* 87 *N.J.* at 146, 432 *A.*2d 881.

We have similarly recognized the mutability of common law immunities even when they have been incorporated in statutory enactments. For example, although the Court construed the Married Persons' Act, *N.J.S.A.* 37:2–1 to –30, as incorporating the common law recognition of spousal immunity, it made clear that "the statute did not incorporate immunity, but rather the common law with its inherent capacity for change." *Immer v. Risko,* 56 *N.J.* 482, 487, 267 *A.*2d 481 (1970). Similarly, in *Renz, supra,* the Court found that the specific adoption of a contributory negligence bar in the railroad immunity act, *N.J.S.A.* 48:12–152, was intended to incorporate contributory negligence as a common law doctrine and could, therefore, in light of public policy and changing circumstances, accommodate the evolution of that doctrine into comparative negligence under common law principles. 87 *N.J.* at 449, 435 *A.*2d 540. In sum, "the common law immunities that survived the enactment of the Tort Claims Act remain subject to judicial modification, and it would be a mistake to infer a legislative intent to freeze the development of this common law creation." *Rochinsky v. New Jersey Dep't. of Transp.,* 110 *N.J.* 399, 423, 541 *A.*2d 1029 (1988) (Handler, J., dissenting).

■ We are thus enjoined to inquire whether conditions have changed and whether principles of public policy have evolved to impel us to reexamine and question the reasons that gave rise to the common law municipal immunity for the negligent maintenance of sidewalks. We have already noted that the common law

municipal sidewalk immunity has its origins in the broader doctrine of sovereign immunity, that a municipality will not be liable for mere nonfeasance in respect of dangerous conditions on public property. *Supra* at 431, 734 *A*.2d at 764. Thus, just as a municipality was not answerable for damages " 'incident to [a] road falling out of repair,' " so too was it immune for like wear and tear occurring on a sidewalk. *Milstrey, supra,* 6 *N.J.* at 409, 79 *A*.2d 37 (citing *Buckalew v. Freeholders of Middlesex,* 91 *N.J.L.* 517, 104 *A.* 308 (E. & A.1918)). This was a reflection of the broad immunities applicable to the maintenance of roads. "Under the common law there was no liability, except by special statute, on the part of either municipal government or of [a] public officer to a civil suit for damages arising out of the negligent performance of a governmental duty, including the failure to keep either bridges or roads in proper repair; an immunity which arose out of ancient precedent and public policy." *Id.* at 415, 79 *A*.2d 37 (Case, J., dissenting) (citations omitted). In *Buckalew, supra,* which held that a municipality was not liable for injuries incurred by a driver when his automobile crashed due to a negligently maintained road, the Court emphasized that the Legislature itself had the power to abrogate its sovereign immunity and "impos[e] ... liability for damages incident to [a] road falling out of repair, and ... [u]nless and until the Legislature interferes ... [liability] will not attach to public corporations for the result of accidents growing out of a want of repair of public highways." 91 *N.J.L.* at 521–22, 104 *A.* 308.

In enacting the TCA, the Legislature may be viewed as having "interfered" with the continuation of sovereign immunity for sidewalks. The TCA has altered the standards for government tort responsibility over public property. In so doing, it acknowledged the view, repeatedly recognized by this Court, that the doctrine of sovereign immunity "does not accord with notions of fundamental justice applicable to our elected representative form of government." *See New Jersey Educ. Facilities Auth. v. Gruzen Partnership,* 125 *N.J.* 66, 69, 592 *A*.2d 559 (1991) (citing

*Willis, supra,* 55 *N.J.* 534, 264 *A.*2d 34;  *P T & L Constr. Co. v. Commissioner, Dep't of Transp.,* 55 *N.J.* 341, 262 *A.*2d 195 (1970)). Accordingly, the TCA provides that a statutory declaration or recognition of liability can displace sovereign immunity.  *See Burke v. Deiner,* 97 *N.J.* 465, 472, 479 *A.*2d 393 (1984).  The Act expressly contemplates municipal liability for dangerous conditions of public property in *N.J.S.A.* 59:4–2.  Specifically, that section provides that a municipality may be held liable for a dangerous condition on its public property, regardless of the cause, but only if the failure to correct that condition is palpably unreasonable. *Ibid.*

Although *N.J.S.A.* 59:4–2 does not refer expressly to any class of public property, such as sidewalks or streets, numerous cases have held that roadways, and their constituent elements, are governed by the TCA. *See Brown v. Brown,* 86 *N.J.* 565, 432 *A.*2d 493 (1981) (applying *N.J.S.A.* 59:4–2 to negligently maintained swale ditch on highway); *Furey v. County of Ocean,* 273 *N.J.Super.* 300, 641 *A.*2d 1091 (App.Div.) (holding that TCA exposes municipality to liability for inadequate repair of shoulder of roadway), *certif. denied,* 138 *N.J.* 272, 649 *A.*2d 1291 (1994); *Daniel v. State Dep't of Transp.,* 239 *N.J.Super.* 563, 571 *A.*2d 1329 (App. Div.) (same in respect of a negligently repaired highway median), *certif. denied,* 122 *N.J.* 325, 585 *A.*2d 343 (1990); *Whaley v. County of Hudson,* 146 *N.J.Super.* 76, 79, 368 *A.*2d 980 (Law Div.1976) (holding that "by *N.J.S.A.* 59:4–1 and 59:4–2 the Legislature has extended governmental liability to road defects caused by wear and tear").  The statutory standard is clearly expressive of a public policy that is inconsistent with the reasons that sustained the creation of the blanket common law municipal immunity for nonfeasance in respect of dangerous conditions of public property.

In imposing liability under *N.J.S.A.* 59:4–2 relating to dangerous conditions of public property, it is not known whether the Legislature specifically intended to include sidewalks.  At the time of the TCA's adoption, however, municipal sidewalk immunity was equated with the municipal immunity generally applicable to all

public property, and in fact was correlated with the municipal immunity relating to streets. *Milstrey, supra,* 6 *N.J.* at 408–09, 79 *A.*2d 37; *see, e.g., Mitchell,* 163 *N.J.Super.* at 290, 394 *A.*2d 886; *Guerriero, supra,* 175 *N.J.Super.* at 3, 417 *A.*2d 547. There is no suggestion in the TCA that the Legislature intended to exclude sidewalks from the definition of public property. The Legislature made no effort to exempt sidewalks from the purview of *N.J.S.A.* 59:4–2, despite the prevailing understanding at common law that sidewalks were comparable to streets and considered public property. Thus, logic and common sense dictate that the statutory definition of "public property" in that section encompasses sidewalks. *Cf. Rochinsky, supra,* 110 *N.J.* at 405, 412–13, 541 *A.*2d 1029 (holding that common law immunity for snow removal survived TCA; noting that that immunity developed "[i]n the midst of [a] gradual erosion of judicial tolerance for the doctrine of sovereign immunity" but was reflective of "the unique challenge snow removal poses for public entities" and that conditions supporting that immunity remained prevalent).

Given the Legislature's embrace in the TCA of a standard that allows for limited or qualified liability measured only by palpably unreasonable conduct relating to the dangerous condition of improved public property, we accept that expression of legislative judgment as reflective of the principles of public policy that must be factored into the judicial understanding of the common law. Because the common law immunity relative to sidewalks and roadways was strongly influenced by the belief that tort responsibility thereover remained very much a legislative prerogative, the legislative signal to abandon that immunity should be heeded. Consequently, we see no reason why the blanket immunity rule applicable to sidewalks should not be scaled back in respect of municipalities to conform to the standard expressed by the TCA.[2]

---

[2] Our decision to abrogate municipal immunity does not affect the common law sidewalk immunity retained by residential landowners. The reasons that impel us to overrule the municipal immunity, namely, the legislative determination to allow liability based on palpably unreasonable conduct in respect of

## C.

Our decision that the common law sidewalk immunity does not apply to municipalities is based on the allegations in this case, and the assumptions by the courts below, that the municipality had sufficient control over or responsibility for the maintenance and repair of the sidewalk and/or the curb to serve as a basis for liability. That finding is crucial to any imposition of municipal liability because, in order to qualify as "public property," a sidewalk and/or a curb must be owned or controlled by the public entity. *N.J.S.A.* 49:4–1c (defining "public property" as "real or personal property owned or controlled by the public entity, but does not include easements, encroachments and other property that are located on the property of the public entity but are not owned and controlled by the public entity"). In this regard, the Appellate Division, noting that "defendant's control of the curb [is] a preliminary issue," observed:

Here, defendant does not contest its control of the curb. Indeed, its subsequent act of placing a cone at the site of plaintiff's fall is indicative of its control. One of defendant's employees acknowledged defendant's responsibility to repair the curb. A remedial or precautionary measure taken after an event, while inadmissible to prove negligence, may be considered as evidence that a defendant had control over the property in question. *Manieri v. Volkswagenwerk,* 151 *N.J.Super.* 422, 432, 376 *A.*2d 1317 (App.Div.1977), *certif. denied,* 75 *N.J.* [594, 384 *A.*2d 824](1978); *N.J.R.E.* 407.

To the extent that the curb is under municipal control, our decision rejecting the common law municipal immunity applicable to sidewalks and invoking the standards under the TCA for determining municipal liability renders unnecessary a definitive determination of whether or not a curb should be considered a constituent part of the sidewalk as opposed to the street. We note, however, that in other contexts, *i.e.,* those involving private property owners, that consideration may be relevant. We recognize, as in so many of our "sidewalk cases," that whether a curb is deemed part of a sidewalk or a street might well depend on the

dangerous conditions of public property, do not apply to private property owners.

context and facts in the given case. *E.g., Yanhko, supra,* 70 *N.J.* 528, 362 *A.*2d 1; *Mitchell, supra,* 163 *N.J.Super.* 287, 394 *A.*2d 886; *Guerriero, supra,* 175 *N.J.Super.* 1, 417 *A.*2d 547. We are constrained, however, to observe that there are strong reasons for considering a curb as part of a street.

The Appellate Division, we note, determined that a curb is a constituent part of a roadway, thus qualifying as "public property" under *N.J.S.A.* 59:4–2.[3] In *Levin, supra,* the court determined that a curb is not an intrinsic part of a sidewalk, but rather, of a roadway:

> A curb separated from the sidewalk by a grass strip is a feature of the road, not the sidewalk. Its primary functions are to channel surface water from the road into storm drains and to serve as a barrier for cars to park against. Although such a curb is sometimes used by pedestrians to cross the street, like a road it is a significantly less immediate means of pedestrian ingress and egress to the abutting property than is a sidewalk.
>
> [221 *N.J.Super.* at 65, 533 *A.*2d 977.]

The characterization of a curb as part of the street and not the sidewalk in *Levin* was later favorably cited in *MacGrath v. Levin Properties,* 256 *N.J.Super.* 247, 252, 606 *A.*2d 1108 (App.Div.), *certif. denied,* 130 *N.J.* 19, 611 *A.*2d 656 (1992). Other courts considering the issue have reached a similar conclusion. *See Humphries v. Trustees of the Methodist Episcopal Church of Cresco,* 566 *N.W.*2d 869, 873 (Iowa 1997) (holding that statutory municipal immunity for negligence in failure to remove accumulations of snow and ice from street applied where pedestrian fell on curb because curb was "part of street," noting that word "street" should be interpreted broadly so as to effectuate legislative intent); *Gallegos v. Midvale City,* 27 *Utah* 2d 27, 492 *P.*2d 1335, 1336 (1972) (construing statute requiring filing against city within

---

[3] Judge King concurred in that part of the majority opinion directed to this point. Judge King stated that his opinion in *Mitchell, supra,* 163 *N.J.Super.* 287, 394 *A.*2d 886, "considered a claim of liability [against a municipality] based on a sidewalk defect existing at the curb." In contrast, Judge King wrote, "I am satisfied that this case before us is a claim for a dangerous condition of public property in or on the public roadway, and is not a sidewalk defect case."

thirty days for injury caused by defective, unsafe, dangerous condition of street to include curb as part of street).

Additional support for classifying a curb as incident to a street is found in the recent Residential Site Improvement Standards, *N.J.A.C.* 5:21–1.1 to –7.5, promulgated by the Department of Community Affairs pursuant to the Residential Site Improvement Standards Act, *N.J.S.A.* 40:55D–40.1 to –40.7. *See New Jersey State League of Municipalities v. Department of Community Affairs,* 158 *N.J.* 211, 218, 729 *A.*2d 21 (1999) (sustaining facial validity of act and regulations). The regulations define "cartway" as "the actual road surface area from curbline to curbline" and "curb" as "a stone, concrete, or other improved boundary marking the edge of the roadway or paved area." *N.J.A.C.* 5:21–1.4. In contrast, "sidewalk" is defined as "an improved path for pedestrian use *outside the cartway.*" *Ibid.* (emphasis added). Moreover, the regulations suggest that a curb is an integral feature of a street by providing that "[c]urbs or curbs and gutters shall be used for drainage purposes, safety, and delineation and protection of pavement edge" and that "[g]enerally, curbs shall be required on streets with on-street parking." *N.J.A.C.* 5:21–4–3. Curb requirements may be waived only in extremely narrow circumstances, and if waived, a comparable means of "edge definition and stabilization" is required. *Ibid.* In contrast, the dictates for sidewalk construction lack uniformity and vary according to the net density and location of the development. *N.J.A.C.* 5:21–4.5. In many cases, sidewalks are not required at all. *See also N.J.S.A.* 27:7–1 (governing acquisition, construction, and maintenance of state highways and defining "improvement" as "the original work on a road ... consist[ing] of location, grading, surface and subsurface drainage provisions, including curbs, gutters, and catch basins. . . ."); *McNally v. Township of Teaneck,* 75 *N.J.* 33, 36, 379 *A.*2d 446 (1977) (describing township ordinance providing that new paving and new curbs would be installed on parts of eleven streets in three residential areas).

Policy reasons also support the classification of a curb as part of a street for purposes of determining municipal liability for pedestrian injuries relating to the dangerous condition of curbs. If curbs are deemed to be part of the sidewalk, the duty of care owed by an abutting landowner to a pedestrian would depend on the status of the adjoining property owner, *i.e.*, whether the property is public or private and, if private, whether the property is residential or commercial. If, however, the curb is considered part of the street, then the responsibility for that curb would be that of the municipality and would be subject to the uniform standards of the TCA.

## D.

■ We conclude that the common law municipal immunity for dangerous conditions applicable to sidewalks is inconsistent with the principles underpinning the TCA. Accordingly, we hold that the traditional immunity for negligently maintained sidewalks accorded municipalities, as recognized at common law, is abrogated, and, further, that liability resulting from the dangerous condition of such public property be determined in accordance with the provisions of the TCA governing liability on the part of a municipality for its public property.

## III

*N.J.S.A.* 59:4–2, requires that before a plaintiff may prevail against a public entity on the ground that it failed to protect against a dangerous condition of public property, the plaintiff must prove

> that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or b. a public entity had actual or constructive notice of the dangerous condition under section 59:4–3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

[*N.J.S.A.* 59:4–2.]

In order to establish that a public entity had actual notice of a dangerous condition for purposes of *N.J.S.A.* 59:4–2, the public entity must have "had actual knowledge of the existence of the condition and knew or should have known of its dangerous character." *N.J.S.A.* 59:4–3a. Alternatively, a public entity may be charged with constructive notice if

> plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.
>
> [*N.J.S.A.* 59:4–3b.]

Contrary to the determination of the Appellate Division, plaintiff has not established either actual or constructive notice here.

■ Plaintiff stated in deposition that she was aware of numerous cracks in the curbing in front of her house prior to her accident. Plaintiff admitted, however, that for at least the three or four years prior to that time, she had never complained about the condition of the curbing to Borough officials. Plaintiff instead relied on the affidavit of a neighbor, Axel Vikjaer, to establish notice. Vikjaer claimed that

> [o]n several occasions prior to September 3, 1995 I telephoned the Borough of Leonia and advised them that the curb *in front of my house* was in poor condition ... Several years ago, I do not remember the exact date, I sent photographs of the curb to the Borough of Leonia.

Even assuming the validity of Vikjaer's complaints, they cannot serve as notice to defendant in respect of plaintiff's defective curb. The complaints did not specify any dates and, further, revealed that Vikjaer's property was on a different side of the street. Moreover, plaintiff herself stated that the condition of curbing on the street varied from home to home, with most of it "pretty bad," although "[n]ot all."

■ Complaints of neighborhood residents about a dangerous condition may serve to establish actual or constructive notice to a municipality of *that condition*. *See Chatman v. Hall*, 128 *N.J.* 394, 418, 608 *A.*2d 263 (1992); *Saldana v. DiMedio*, 275 *N.J.Super.* 488, 504, 646 *A.*2d 522 (App.Div.1994). However, Vikjaer's complaints about his own curb cannot serve as notice of a defective

curb at a *different location.* We agree with the trial court that Vikjaer's affidavit was inadequate to satisfy the notice requirement of *N.J.S.A.* 59:4–3.

Because plaintiff cannot establish that the Borough had actual or constructive notice of the dangerous condition of her property, it is appropriate to award summary judgment in favor of defendant. *See Grzanka v. Pfeifer,* 301 *N.J.Super.* 563, 694 *A.*2d 295 (App.Div.1997) (granting summary judgment to defendant city because of lack of notice of dangerous condition as required by *N.J.S.A.* 59:4–2), *certif. denied,* 154 *N.J.* 607, 713 *A.*2d 498 (1998); *DeBonis v. Orange Quarry Co.,* 233 *N.J.Super.* 156, 558 *A.*2d 474 (App.Div.1989) (same). Our conclusion that plaintiff has failed to present a claim under *N.J.S.A.* 59:4–2 obviates the need to determine whether other provisions of the TCA, *e.g., N.J.S.A.* 59:2–6 or *N.J.S.A.* 59:2–3, otherwise immunize defendant from liability.[4]

## IV

For the foregoing reasons, we affirm the Appellate Division's determination that the common law sidewalk immunity for negligent sidewalk maintenance is unavailable to municipalities, and that municipal liability for injuries to pedestrians resulting from negligently maintained curbs must be governed by those provisions of the TCA that relate to dangerous conditions of public property. We reverse the Appellate Division's determination that

---

[4] The Appellate Division, on these points, observed that finding immunity here would "fly in the face" of *N.J.S.A.* 59:2–6, because that statute "specifically provides that this immunity does not 'exonerate a public entity from liability for failure to protect against a dangerous condition [of public property] ...' [and] contemplates a situation in which the public entity conducts health or safety inspections to enforce safety standards on private property." The court further observed that *N.J.S.A.* 59:2–3c or d, which immunizes municipal action based upon the exercise of discretion, is not applicable because subsection c applies to "the type of decisions which are usually made at higher levels of government[,]" and subsection d is a "qualified immunity and is applicable to the implementation of a program in the face of competing demands and limited resources, such as whether the curbing on the north side of town should be repaired before the curbing on the west side of the town."

there be a remand for a trial on the issue of whether the municipality can be found liable under those TCA provisions.

So ordered.

O'HERN, GARIBALDI, and STEIN, JJ., concur in result.

O'HERN, J., concurring.

I agree that the Tort Claims Act (TCA), *N.J.S.A.* 59:1–1 to 13–10, should govern the liability of a municipality that owns a public sidewalk. I disagree that the owner of a residential sidewalk, who is under governmental regulation to maintain the sidewalk, may sue a public body that neither owns nor maintains the sidewalk. Such a holding is as logical as it would be were plaintiff able to sue herself. Under our law, an abutting landowner's " 'title [ ] goes to the middle of the street and [landowners] continue to retain considerable interest in and control over that portion of the sidewalk located on their land.' " *Christmas v. City of Newark,* 216 *N.J.Super.* 393, 400, 523 *A.*2d 1094 (App.Div.1987), *certif. denied,* 108 *N.J.* 193, 528 *A.*2d 19 (1987) (quoting *Yanhko v. Fane,* 70 *N.J.* 528, 540, 362 *A.*2d 1 (1976)). The public is merely afforded an easement of passage over sidewalks. *Ibid.* Angela Norris was injured by a defect in the curb situated in front of her own home. Thus, the incident occurred on her own property. The majority's finding that the sidewalk in question is public property subject to municipal liability is based on a finding that the municipality placed a cone at the site after the accident. That should not be enough to establish municipal ownership or control.

I.

Before liability under *N.J.S.A.* 59:4–2 can be imposed on a municipality for injuries sustained due to a property's condition, that property must be deemed public. *Christmas, supra,* 216 *N.J.Super.* at 397, 523 *A.*2d 1094; *Farias v. Township of West-field,* 297 *N.J.Super.* 395, 403, 688 *A.*2d 151 (App.Div.1997). There is "[n]othing in the legislative history [of the TCA] suggest[ing]

that a public entity is liable for injuries sustained by virtue of a dangerous condition existing on the property of another." *Farias, supra,* 297 *N.J.Super.* at 403, 688 *A.*2d 151 (quoting *Ball v. New Jersey Bell Telephone Co.,* 207 *N.J.Super.* 100, 107, 504 *A.*2d 29 (App.Div.), *certif. denied,* 104 *N.J.* 383, 517 *A.*2d 391 (1986)). Public property is defined under *N.J.S.A.* 59:4–1c as "real or personal property owned or controlled by the public entity, but does not include easements, encroachments and other property that are located on the property of the public entity but are not owned or controlled by the public entity." In order for the Court to impose liability on a municipality under the TCA for injuries sustained on a particular sidewalk, it must first establish that the sidewalk was either "owned or controlled" by the municipality.

"Indeed, property 'controlled' does not simply mean any property falling within the geographical boundaries of a municipality." *Christmas, supra,* 216 *N.J.Super.* at 398, 523 *A.*2d 1094 (citing *Brothers v. Borough of Highlands,* 178 *N.J.Super.* 146, 150, 428 *A.*2d 528 (App.Div.1981); *N.J.S.A.* 59:4–1). The imposition of liability under the TCA requires a showing of more than mere "incidental acts" of control by the public entity over the property. *Farias, supra,* 297 *N.J.Super.* at 403, 688 *A.*2d 151 (holding that removal of snow and placement of trash cans in area did not support assertion of control of public entity over sidewalk warranting liability); *see also Christmas, supra,* 216 *N.J.Super.* at 398–99, 523 *A.*2d 1094 (holding that sidewalk abutting commercial property, because of landlord's maintenance and repair obligations, did not constitute public property within municipal control for which municipality is liable); *Straus v. Borough of Chatham,* 316 *N.J.Super.* 26, 719 *A.*2d 664 (App.Div.1998) (holding that requirement of repair permit for sidewalk did not transfer liability of commercial landowner to municipality); *Tierney v. Gilde,* 235 *N.J.Super.* 61, 65, 561 *A.*2d 638 (App.Div.), *certif. denied,* 117 *N.J.* 666, 569 *A.*2d 1357 (1989) (holding that shade tree commission ordinance evidenced enough control to impose liability on municipality "for injuries stemming from defective sidewalks caused by shade tree roots"). Before liability can be imposed on a public

entity, there must be sufficient evidence to establish that the public entity either controlled or owned the property in question.

## II.

In *Yanhko, supra,* the Court reaffirmed the common-law rule that a property owner is not liable for injuries sustained as a result of the natural deterioration of a sidewalk. 70 *N.J.* at 532, 362 *A.*2d 1. Since its holding in *Yanhko* twenty-three years ago, this Court has recognized only one exception imposing liability on commercial landowners for injuries sustained on a sidewalk not maintained in reasonably good condition. *Stewart v. 104 Wallace Street, Inc.,* 87 *N.J.* 146, 152, 432 *A.*2d 881 (1981). The Court in *Stewart* expressly stated that this exception to *Yanhko* "is *confined* to owners of commercial property." *Id.* at 159, 432 *A.*2d 881 (emphasis added); *Brown v. St. Venantius School,* 111 *N.J.* 325, 329, 544 *A.*2d 842 (1988); *Christmas, supra,* 216 *N.J.Super.* at 400, 523 *A.*2d 1094. The Appellate Division in *Christmas* emphasized that it was

> satisfied that the *Stewart* Court clearly stated its intention to place the liability for negligence on commercial property owners.... Thus we do not interpret the [C]ourt's holding in *Stewart* to mean that liability is shared by municipalities and commercial landowners but rather, the duty to maintain sidewalks is limited solely to owners of commercial property.
>
> [216 *N.J.Super.* at 400, 523 *A.*2d 1094.]

The basis for the commercial-landowner exception is "expressly tied to the use and benefit derived from the sidewalk by the owner of the abutting 'premises.'" *Hollus v. Amtrack Northeast Corridor,* 937 *F.Supp.* 1110, 1115 (D.N.J.1996) *aff'd,* 118 *F.*3d 1575 (3d Cir.1997) (citing *Stewart, supra,* 87 *N.J.* at 158, 432 *A.*2d 881). *Stewart* emphasized that the commercial-landowner exception to non-liability for the maintenance of sidewalks was because commercial landowners

> retain[ed] considerable interest in and rights to the use of the abutting sidewalks, including the right to prevent obstruction of the public's view of the commercial property from the sidewalk, use of the sidewalk for "stoops ... and other domestic or trade conveniences" and the benefit of the sidewalk providing commercial

owners with "easy access to their premises...." ... [And] sidewalks "increase the value of commercial property."

[*Chimiente v. Adam Corp.*, 221 *N.J.Super.* 580, 583, 535 *A*.2d 528 (App.Div.1987) (quoting *Stewart, supra,* 87 *N.J.* at 151–52, 432 *A*.2d 881).]

Angela Norris is suing the Borough for injuries that she sustained due to the deterioration of the curb situated in front of her own home. Unlike the commercial benefit that a sidewalk affords a proprietor, there is no benefit afforded to a municipality warranting a similar duty. *Sims v. City of Newark,* 244 *N.J.Super.* 32, 40, 581 *A*.2d 524 (Law Div.1990); *Christmas, supra,* 216 *N.J.Super.* at 396, 523 *A*.2d 1094.

The majority of municipalities "have within their bounds miles of sidewalks," and it would be inconsistent with the Act to hold a municipality liable for injuries that result from the natural deterioration of those sidewalks. *Christmas, supra,* 216 *N.J.Super.* at 396, 523 *A*.2d 1094; *Sims, supra,* 244 *N.J.Super.* at 40, 581 *A*.2d 524. In enacting the TCA in 1972, the Legislature

recognized that while an entrepreneur may readily be held liable for negligence within the chosen ambit of his activity, the area in which government has the power to act for the public good is almost without limit and therefore the government should not have the duty to do everything that might need to be done.

[*Christmas, supra,* 216 *N.J.Super.* at 396, 523 *A*.2d 1094 (citing *N.J.S.A.* 59:1–2).]

I might be willing to make the distinction that the majority makes between a sidewalk and a curb. *Ante* at 445–47, 734 *A*.2d at 772–73; *see Levin v. Devoe,* 221 *N.J.Super.* 61, 65, 533 *A*.2d 977 (App.Div.1987); *MacGrath v. Levin Properties,* 256 *N.J.Super.* 247, 252, 606 *A*.2d 1108 (App.Div.), *certif. denied,* 130 *N.J.* 19, 611 *A*.2d 656 (1992). On balance, I believe that the distinction would lead to too many disputes about where the sidewalk ends and the curb begins. What I cannot accept, however, is a holding that a municipality is generally liable for the condition of residential sidewalks. Although the Court has not held municipalities generally liable, it has allowed the property here to be "deemed public" on too slight a basis.

Justice GARIBALDI joins this opinion.

STEIN, J., concurring.

I join the Court's opinion to the extent that it holds that the Borough of Leonia was subject to liability if the curb in front of plaintiffs' dwelling constituted a dangerous condition of public property within the meaning of *N.J.S.A.* 59:4–2. I would affirm the judgment of the Appellate Division, however, and remand the matter for trial because in my view the Court's conclusion that the municipality had neither actual nor constructive notice of the dangerous condition is premature.

*N.J.S.A.* 59:4–3 defines actual and constructive notice for purposes of public entity liability, pursuant to *N.J.S.A.* 59:4–2:

59:4–3. Actual notice; constructive notice

a. A public entity shall be deemed to have actual notice of a dangerous condition within the meaning of subsection b. of section 59:4–2 if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character.

b. A public entity shall be deemed to have constructive notice of a dangerous condition within the meaning of subsection b. of section 59:4–2 only *if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.*

[Emphasis supplied.]

The briefs in opposition to the Borough's motion for summary judgment included excerpts from the deposition of Angela Norris who testified that the curbing abutting her property was significantly deteriorated, and assert that the condition had persisted without remedy for a number of years. Moreover, in their brief opposing summary judgment, plaintiffs noted that defendants had failed to answer interrogatories propounded in April 1996, and also had indicated that the Borough of Leonia did not possess any documents responsive to plaintiffs' demand for records of complaints about sidewalks, streets and curbing within 1000 feet of plaintiffs' residence for the preceding two years. Plaintiffs emphasized their desire to take the depositions of Borough officials in order to explore the question of actual or constructive notice, specifically making reference to the Borough's acknowledgment during the argument of the motion for summary judgment that

the DPW was aware of a complaint made by a neighbor of plaintiff concerning defective curbing abutting his residence.

This record demonstrates that the Law Division judge who granted defendants' motion for summary judgment focused almost entirely on the immunity question and not on the issue of actual or constructive notice. Based on the incomplete state of the record before this Court, I am convinced that we are not sufficiently informed to resolve the notice issue as a matter of law, an issue that was not addressed specifically either by the Appellate Division or the Law Division. This Court should not rush to sustain the grant of summary judgment on a record that contains a strong suggestion of the need for further discovery and case management, especially where the legal issue deemed decisive by the Court is one that the lower courts never saw fit to address. Accordingly, I would remand the matter to the Law Division for further proceedings and permit that court to determine whether further discovery on the question of actual or constructive notice would be appropriate.

*For reversal and remandment*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.