216 N.J. Super. 393 (1987)
523 A.2d 1094
LULAMAE CHRISTMAS, PLAINTIFF-RESPONDENT,
v.
CITY OF NEWARK, A BODY POLITIC, JOHN DOE, SAID NAME BEING FICTITIOUS, TRUSTEES OF THE FIRST PRESBYTERIAN CHURCH AND JAMES JONES, SAID NAME BEING FICTITIOUS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 1986.
Decided April 2, 1987.
*394 Before Judges MORTON I. GREENBERG, J.H. COLEMAN and GRUCCIO.
John C. Pidgeon, First Assistant Corporation Counsel, argued the cause for appellant (Glenn A. Grant, Corporation Counsel, attorney; Robert MacDonald, Assistant Corporation Counsel, on the brief).
Kenneth E. Walker, II, argued the cause for respondent (Freeman & Bass, attorneys; Gary E. Linderoth, of counsel and on the brief).
The opinion of the court was delivered by: GRUCCIO, J.A.D.
*395 Defendant City of Newark appeals from a jury verdict awarding damages to plaintiff Lulamae Christmas for injuries sustained when she fell on a sidewalk located in Newark, situated on property owned by the Trustees of the First Presbyterian Church ("Trustees") and leased to a doughnut shop. Trustees were dismissed upon summary judgment since the statute of limitations had expired before they were made parties to the action. The operator of the doughnut shop was never made a party here.
When trial commenced, defendant brought a motion in limine for dismissal of plaintiff's complaint in that a municipality has no duty to repair or maintain the sidewalks abutting commercial property and, therefore, as a matter of law, could not be found liable to plaintiff. In denying the motion, the trial judge opined that the issue of whether or not defendant was liable to plaintiff for her injuries was for the jury to decide. Prior to opening statements, defendant dismissed without prejudice its cross-claim against the Trustees since they were no longer a party to the action.
At the close of plaintiff's case, defendant moved for an involuntary dismissal based on plaintiff's failure to satisfy the requirements of N.J.S.A. 59:4-2. The motion was denied. The jury returned a verdict finding defendant 80% negligent and plaintiff 20% negligent and awarded plaintiff damages in the amount of $25,000. After molding the verdict in accordance with N.J.S.A. 59:9-4 and allocating deductions pursuant to N.J.S.A. 59:9-2e, the trial judge entered judgment in favor of plaintiff in the amount of $19,300.
On appeal defendant contends that the trial court erroneously denied its motion to dismiss plaintiff's case at the close of her proofs since, based on the factual situation presented, the sidewalk where plaintiff fell was not public property within the meaning of the New Jersey Tort Claims Act; defendant is immune from liability on the basis of common law, which has *396 not changed since enactment of the Tort Claims Act, and the responsibility for the maintenance and repair of the sidewalk abutting a commercial property lies, not with defendant, but with the commercial property landowner. We agree.
In 1972, New Jersey enacted the Tort Claims Act, N.J.S.A. 59:1-1, et seq., in response to the Supreme Court's decision in Willis v. Conservation and Economic Dev. Dept., 55 N.J. 534 (1970) which all but eliminated sovereign immunity in actions brought against the State and other public entities. In enacting that statute, the Legislature recognized that while an entrepreneur may readily be held liable for negligence within the chosen ambit of his activity, the area within which government has the power to act for the public good is almost without limit and therefore the government should not have the duty to do everything that might be done. N.J.S.A. 59:1-2. Consequently, the Legislature declared "that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein...." N.J.S.A. 59:1-2.
Even before the act, however, our Supreme Court acknowledged and applied the doctrine that "there are several kinds of acts or omissions of government, no matter how they are categorized, defined or labeled, or how governmental immunity from suit is to be regarded, which should not give rise to tort liability." Horan v. State, 212 N.J. Super. 132, 135 (App.Div. 1986). See also Hoy v. Capelli, 48 N.J. 81, 87 (1966). Most municipalities have within their bounds miles of sidewalks. As our largest city, Newark has a proportionately increased number of miles of sidewalks abutting commercial property.
Here, plaintiff contends the sidewalk upon which she fell is public property and that since defendant failed to maintain and repair the sidewalk, it was liable for her injuries. Liability provisions of the Tort Claims Act for conditions of public property provide:

*397 A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
a. A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
b. A public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable. [N.J.S.A. 59:4-2; emphasis supplied].
Thus, before liability can be imposed against Newark it must first be shown that the sidewalk was public property. Public property is defined as "real or personal property owned or controlled by the public entity...." N.J.S.A. 59:4-1c. Here, the record reveals no evidence whatsoever that the sidewalk or any adjoining property was owned by Newark. To the contrary, the record does show that the property was owned by the Trustees. Absent proof of ownership, the sidewalk may be considered public property only if it was actually controlled by Newark. N.J.S.A. 59:4-1c.
In finding the sidewalk public property, the trial court here relied on Guerriero v. Palmer, 175 N.J. Super. 1 (Law Div. 1979). The judge in Guerriero and the trial judge herein specifically relied on the following language from Yanhko v. Fane, 70 N.J. 528 (1976):
Presumably, [abutting property owner's] title goes to the middle of the abutting street, subject to the public easement of vehicular passage in the street and of pedestrian passage on the sidewalk, with neither of which [abutting property owners] are entitled to interfere.... (cites omitted). In legal contemplation, the easement of public passage renders the sidewalk an integral part of the public highway.... (cites omitted).
The unrestrictable right of passage on the highway belongs to the public. In principle, therefore, a remedy for injury to a pedestrian caused by improper maintenance thereof should be subsumed under the heading of public liability. It should be for the Legislature as representative of the public at large to declare or regulate such liability....

*398 Despite decades of adherence by our courts to the principles enunciated above, the Legislature has not seen fit to impose a per se tort duty on an abutting property owner. [Id. at 534].
However, the validity of this language must be scrutinized in light of Stewart v. 104 Wallace St., Inc., 87 N.J. 146 (1981). There, plaintiff brought an action for damages against the owner of property and a lessee of adjacent property abutting a deteriorated sidewalk upon which he had fallen. Id. at 146. In rendering its decision, our Supreme Court specifically and unambiguously overruled Yanhko, supra, as it applied to commercial property owners. Stewart, supra, 87 N.J. at 149.
Furthermore, the trial court relied upon Danow v. Penn. Central Trans. Co., 153 N.J. Super. 597 (Law Div. 1977) to support its position that the sidewalk is public property and defendant exercised control over it. In Danow, an action was brought against the State when the vehicle in which plaintiff's decedent was riding was struck by a freight train at a grade crossing. The court held that the State's authority to improve and enforce railroad grade crossing standards did not render the State liable under the Tort Claims Act for the accident, and interpreted the term "control", as used in N.J.S.A. 59:4-1c, not to extend beyond possessory control. Defendant here strenuously and correctly objects to this conclusion and argues that there is no evidence in the record which indicates that defendant had possession or control of the sidewalk here, other than the fact that it was located within defendant's boundaries. Indeed, property "controlled" does not simply mean any property falling within the geographical boundaries of a municipality. See Brothers v. Highlands, 178 N.J. Super. 146, 150 (App.Div. 1981); N.J.S.A. 59:4-1.
Moreover, even if we were to agree, which we do not, that the sidewalk was public property, plaintiff failed to meet the requisite burden of proof in order to recover under N.J.S.A. 59:4-2, the act's general liability section. In order to recover under these provisions, a plaintiff must show that

*399 the property was in a dangerous condition at the time of the injury; that the injury was proximately caused by the dangerous condition; that the dangerous condition created a reasonably foreseeable risk of the kind of injury that was incurred; and that a public employee created the dangerous condition or that the public entity had notice in time to protect against the condition itself. (Cites omitted). Additionally, there can be no recovery unless the action or inaction on the part of the public entity in protecting against the condition was "palpably unreasonable," a term nowhere defined in the Act.
....
We conclude that the term [palpably unreasonable] implies behavior that is patently unacceptable under any given circumstance.... Moreover, the burden of proof with regard to the palpable unreasonableness of the State's action or inaction is on the plaintiff. .. . (Cites omitted). [Kolitch v. Lindedahl, 100 N.J. 485, 492-493 (1985)].
Nowhere does the record show that plaintiff established, or even alluded to, the fact that the hole into which she fell was in any way created by a public employee or that Newark had notice, actual or constructive, of the existence of the defective sidewalk. Nor did plaintiff prove that Newark's inaction was "palpably unreasonable."
In rendering its decision in Stewart, supra, our Supreme Court carefully reviewed the history of sidewalk law beginning with the long-held principle that sidewalks are primarily intended for pedestrians and their primary function is the public's right to travel upon them. Id. 87 N.J. at 151. In addition, the court discussed the rights and liabilities of an owner of land abutting sidewalks, and specifically addressed Yanhko's "no liability" rule, a product of early English common law, which provided that "the parish at large is prima facie bound to repair all highways lying within it," Stewart, supra, 87 N.J. at 153, citing The King v. Inhabitants of Sheffield, 2 T.R. 106, 111, 100 E.R. 58, 61 (K.B. 1787). The Stewart court stated that the rule was derived from "conditions that no longer exist and is not responsive to current urban conditions." Ibid. See Moskowitz v. Herman, 16 N.J. 223, 226 (1954) (Jacobs, J., dissent); Murray v. Michalak, 58 N.J. 220 (1971) (Proctor, J., dissent); Yanhko, supra, 70 N.J. at 537 (Pashman, J., dissent). See also Note, Survey of Tort Law  Sidewalk Negligence, 30 Rut.L.Rev. 782, 789 & n. 46 (1977).
*400 Although the public does acquire an easement of passage over sidewalks, "defendants' title still goes to the middle of the street and defendants continue to retain considerable interest in and control over that portion of the sidewalk located on their land." Yanhko, supra, 70 N.J. at 540. Indeed, a landowner's rights over the portion of the sidewalk located on his land has long been recognized.
An abutting owner necessarily enjoys certain advantages from the existence of an open street adjoining his property, which belong to him by reason of its location, and are not enjoyed by the general public, such as the right of free access to his premises.... Dill v. Camden Bd. of Ed., 47 N.J. Eq. 421, 435 (Ch. 1890), quoting Lohr [Lahr] v. Metropolitan Ry. Co., 104 N.Y. 268, 291, 10 N.E. 528, 532 (Ct.App. 1887). [Yanhko, supra, 70 N.J. at 541, n. 2].
We are satisfied that the Stewart court clearly stated its intention to place the liability for negligence on commercial property owners when it said "the duty to maintain abutting sidewalks that we impose today is confined to owners of commercial property." Id. 87 N.J. at 159. [Emphasis supplied]. Thus, we do not interpret the court's holding in Stewart to mean that liability is shared by municipalities and commercial landowners but rather, the duty to maintain sidewalks is limited solely to owners of commercial property.
Coincidentally, the sidewalk upon which the Stewart plaintiff fell was also located in Newark. In reviewing statutory law, the Stewart court cited Section 22:3-1 of the Revised Ordinances of Newark:

Any person owning, leasing or occupying any house or other building, or vacant lot, fronting on any street in the City shall, at his or their charge and expense, well and sufficiently pave and maintain in good repair, in accordance with this title and the regulations of the Director, the sidewalk, including the authorized installations thereon and therein, and the curb of the street in front of such house, building or lot. [Footnote omitted; Stewart, supra, 87 N.J. at 156].
Furthermore, the court said that although the ordinance alone creates a duty on landowners for sidewalks abutting their property, and that violation of the ordinance may constitute negligence per se, "we rest our decision today on broader *401 principles of common law." Ibid. While this 1951 Newark ordinance was on the books at the time plaintiff's accident occurred in 1982 and is still viable today, neither counsel for plaintiff nor defendant cited it in their briefs or at trial.[1]
Moreover, the Stewart court did not consider the Legislature's refusal to impose liability on an abutting landowner for failure to maintain sidewalks to be dispositive. Id. at 158.
The drawing of the parameters of tort liability has historically been a matter of common law and squarely within the province of this Court. A long line of cases denying recovery to innocent injured plaintiffs makes it abundantly clear that the present law is inadequate to protect pedestrians and is more than overdue for reform. [Ibid.].
Finally, the Stewart court gave several reasons why imposing liability on abutting commercial landowners responded to "the weaknesses of the no liability rule." Id. at 157. Specifically, the court said:
It will provide a remedy to many innocent plaintiffs for injuries caused by improper maintenance of sidewalks. As a corollary, it will give owners of abutting commercial property an incentive to keep their sidewalks in proper repair, a duty already created in many cases by municipal ordinances. It will also eliminate much of the arbitrariness of the old rule. In addition, injured persons will be able to recover for injuries sustained just outside a store as well as those sustained within it. [Id. at 157-158].
Clearly, the Stewart court's holding unambiguously states that commercial property owners, not the municipality, owe a duty to pedestrians to maintain sidewalks which abut their property. See also Mirza v. Filmore Corp., 92 N.J. 390 (1983) (maintenance of public sidewalk abutting commercial property includes removal of ice and snow); Hambright v. Yglesias, 200 N.J. Super. 392 (App.Div. 1985) (two-family home utilized as apartment building is commercial property so as to impose duty upon owner to remove snow and ice from abutting sidewalk).
*402 Furthermore, since Stewart, supra, even a commercial tenant who leases premises has been held liable for public sidewalks. In Jackson v. K-Mart, 182 N.J. Super. 645, 649 (Law Div. 1981), the court held that where a sidewalk provides a direct route between a tenant's store and the parking lot used by its business invitees, the tenant could not escape liability on the ground that it did not own the sidewalk or because the owner had assumed responsibility for its maintenance. Id. at 650. In so ruling, the court set forth the following conclusions of law and policy:
(1) The operator of a commercial establishment must provide reasonably safe premises for business invitees.
(2) No distinction should be made between the operator-owner and the operator-tenant, since in either case it is the operator who is in the best position to discover any dangerous condition.
(3) The duty to provide reasonably safe premises includes a duty to provide a safe path of egress from the premises. [Ibid.]
Here there is no dispute as to who owns the property upon which plaintiff fell; the record is clear that the Trustees of the First Presbyterian Church are the owners of record. Nor is it disputed that this was commercial property since the building abutting the sidewalk housed a doughnut shop.
After carefully reviewing the record in the light of Stewart, supra, it is apparent that the proper defendants to this action should have been the owners of the property, Trustees of the First Presbyterian Church, and whomever leased and operated the doughnut shop. It follows then that the jury's verdict against the City of Newark cannot stand.
In light of plaintiff's failure to show that the sidewalk upon which she fell was in any way owned or controlled by defendant municipality, the trial court erred by not granting defendant's motion in limine.
Reversed and remanded with instructions to enter a judgment of no cause for action in favor of the City of Newark.
NOTES
[1] At oral argument, both parties conceded the existence of § 22:3-1 of the Revised Ordinances of Newark. By this ordinance, Newark has the option of repairing sidewalks but not a legal obligation to do so.