909 A.2d 760 (2006)
388 N.J. Super. 527
Beverly ROMAN, Plaintiff-Appellant,
v.
CITY OF PLAINFIELD and Louis A. Tenorio, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued September 13, 2006.
Decided November 6, 2006.
*761 Vincent Jesuele, Westfield, argued the cause for appellant (Kessler, DiGiovanni & Jesuele, attorneys; Mr. Jesuele, on the brief).
Mark R. Peck argued the cause for respondent (Florio, Perrucci, Steinhardt & Fader, attorneys; Mr. Peck, on the brief).
Before Judges STERN, COLLESTER[1] and BAXTER.
The opinion of the Court was delivered by
BAXTER, J.S.C. (temporarily assigned).
Plaintiff Beverly Roman appeals from the grant of the defendant City of Plainfield's ("the City") motion for involuntary dismissal at the conclusion of plaintiff's case.
Plaintiff was injured on February 16, 2002, when she tripped and fell on a sidewalk slab which was two inches higher than the abutting slab, due to the roots from an adjacent City-owned maple tree which had caused the sidewalk slab to *762 heave.[2] The sidewalk in question ran in front of a commercial dwelling owned by co-defendant Louis Tenorio. As a result of the fall, plaintiff sustained a tear to her rotator cuff and underwent surgery to repair it. Finding that, as a matter of law, the City was immune from liability because it neither owned nor controlled the sidewalk, the trial court granted the City's motion for involuntary dismissal of plaintiff's case, pursuant to R. 4:37-2(b). Although we are mindful of the body of case law which generally immunizes public entities from liability to persons injured on sidewalks abutting commercial property, we conclude that under the particular facts presented here, plaintiff's claim against the City should have been decided by the jury.[3] Accordingly, we reverse.

I.
Plaintiff was walking on the sidewalk in front of 143 Crescent Avenue in Plainfield on her way home from a church event between 7 and 8 p.m. on February 16, 2002 when she bumped her foot on the sidewalk, stumbled and then tripped a second time on the next uplift, causing her to fall and injure her right shoulder. An engineer, Howard Sarrett, testifying on behalf of plaintiff, described this area of the sidewalk as "badly disrupted" in that there "were a number of . . . locations in which the stone slabs have been elevated and depressed and pushed to the side." Sarrett concluded that the two-inch uplift was caused by the root of the tree next to the sidewalk, and that the uplift had existed for at least a decade. In order to correct the problem, the tree roots would have had to be cut and the slab lowered back into its position. Sarrett explained that a second option would have been to remove and replace the existing stone slabs with concrete that would be poured in place to better accommodate the root. He also explained that a two-inch upraised slab constituted a tripping hazard.
The property at 143 Crescent Avenue had been owned by Tenorio since 1979. The building consisted of three tenant-occupied apartments, and a fourth unit in which he resided. He had been aware for "like five or six" years that the sidewalk in front of his property had "height discrepancies" in the slabs. Tenorio insisted that, although he had notified the City that the tree was pushing up the sidewalk slab, the City had forbidden him from doing anything about the roots. He testified on direct examination as follows:
Q Can you tell us for how long those height discrepancies have existed as far as you're aware?
A . . . for some period of time.
Q For some period of time did you say?
A Yes, years back, Inspector O'Casio (phonetic), I made sure they knew the tree stump is pushing the sidewalks. . . .
. . . At that time, she told me that's the city property, she would call the proper department to take care of it.
. . .
Q Do you have a recollection of when that discussion with her occurred?
A It was a consequence of one of the inspections she made on that property.
Q Okay. Do you know what year that was?

*763 A Like five or six.
. . .
Q . . . Did you ever attempt to correct the height difference between those slabs that are shown in P-1 and P-2?
A You mean lately or
Q At any time.
A I was real concerned because that's the city property. They told me that in order to level theget it to the property level, you have to touch the tree.
Q Okay.
A I don't have the authority to touch this. It's the city property.
On cross-examination, Tenorio became uncertain about the time of his contact with City officials, but insisted that he was forbidden by the City from interfering with the tree, and was assured that the City would take care of cutting the tree roots. The city attorney questioned Tenorio regarding his deposition testimony:
Q [Reading from Tenorio's deposition] "During any of those conversations, did you ever speak to the city representative about the condition of the sidewalk in front of your house?
A No. We were not aware about this kind of problem."
Q Wasn't that your [deposition] testimony Mr. Tenorio?
A If you refer to lately, no, I don't talk to the city, but I contacted before. Years back. They told me that they would contact the firm that's in charge to take care of that. I don't hear nothing else from them. That, I assume, the department takes care that.
. . .
Q . . . [that contact] did not occur until after February 16th of 2002, correct?
A Maybe.
The City's attorney continued reading from the deposition transcript:
Q "At any time did you ask the city if you could cut back the root of the tree?
A I contact them and they told me I could do the job. I mentioned to them that, you know, the tree is lifting the plate. They told me I can't damage the tree. I said I told them that's kind of a hard question because there's got to be a solution to this problem, at least the root is cut. I requested they come to see the problem. I never heard anymore from them."
Q "When was that you requested that they come see the problem? Was that before February 16th, 2002 or after?
A I don't recallI don't exactly recall when I made the call."
Plaintiff's case also included the testimony of Oscar Turk, Jr., a senior code enforcement officer for the City. He indicated that a homeowner wanting to repair the sidewalk would be required to obtain the permission of the City Division of Inspections. That Division had no record that the property owner Tenorio ever called or met with any of its staff concerning a sidewalk repair at any time prior to February 16, 2002.
Thus, Tenorio's claim that he had notified the City long ago that the tree roots were causing the sidewalk to heave, and that he was forbidden by the City to trim or cut the tree roots was flatly contradicted by Turk who explained that there was no record of any such call from Tenorio prior to plaintiff's fall.
At the conclusion of plaintiff's case, the City moved for involuntary dismissal pursuant to R. 4:37-2(b). The trial judge was obliged to accept as true all the evidence *764 which supports the position of the party opposing the motion and was required to accord that party the benefit of all legitimate inferences which can be deduced there from. Dolson v. Anastasia, 55 N.J. 2, 5-6, 258 A.2d 706 (1969). If reasonable minds could differ, the defendant's motion for judgment at the conclusion of plaintiff's case must be denied. Id. at 5, 258 A.2d 706.
That being so, when the Court entertained defendant's motion for involuntary dismissal, plaintiff was entitled to an inference that the City had been aware for a decade that the roots of the City's tree were causing the sidewalk slab to be uplifted because the City's inspectors would have seen the uplift during their regular inspections.[4] She was further entitled to an inference that the City had forbidden Tenorio from cutting the roots, that Tenorio's contacts with the City had occurred prior to plaintiff's fall, and that the roots had caused the sidewalk to be in a dangerous condition at the time she fell.
In granting the City's motion for involuntary dismissal, the trial judge reasoned:
The question here, [is] whether the city has exercised a sufficient level of control over the property here, so as to make it responsible for the damage to the sidewalk caused by this particular tree. [Is] there sufficient evidence to give rise to that question to make it a fact question, which ought to be presented to the jury.
. . .
(T)he fact that . . . a city employee indicated that the tree could not be touched without further information from the Department of Works did not, in my view, give rise to evidence of control or even a question of control or even a question of control sufficient to present to a jury for the jury to make the determination as to whether or not in this instance, the city exercises control over this sidewalk. This is rather to me a clear case fitting within the Christmas and Learn holdings that this is simply a sidewalk abutting commercial property, which is the responsibility of the owner of the property. . . . There's nothing here to indicate that the city owns this sidewalk. There's nothing here to indicate that there is even a question that the city controls the sidewalk.
For those reasons, the general tort immunity, found in the Torts Claim Act, applies to this particular case. The motion to dismiss brought by the City of Plainfield in this matter is granted.
The Tort Claims Act ("Act"), N.J.S.A. 59:1-1 to 12-3, provides that "a public entity is not liable for an injury" caused by an act or omission "[e]xcept as otherwise provided by this act." Under the Act, immunity is the rule and liability is the exception. Posey ex rel. v. Bordentown Sewerage Auth., 171 N.J. 172, 181, 793 A.2d 607 (2002).
The exception to the general rule of immunity relevant to this case is found in N.J.S.A. 59:4-2, which covers dangerous conditions on public property. That statute provides:
A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous *765 condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
[N.J.S.A. 59:4-2]
The Act defines "public property" as property that is "owned or controlled by the public entity." N.J.S.A. 59:4-1(c). A "`[d]angerous condition' means a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J.S.A. 59:4-1(a).
By the explicit terms of the Act, a public entity can be liable for dangerous conditions of property it does not own, as long as the municipality "controls" the dangerous property, provided that the requirements of notice, causation, foreseeability, "palpably unreasonable" conduct and permanency of injury are met.
This case requires us to squarely decide whether the plaintiff presented enough evidence so that a jury could find that the municipality "controlled" the sidewalk within the meaning of N.J.S.A. 59:4-1(c). Stated differently, under the circumstances presented here, did the City's actions in forbidding Tenorio from cutting the roots of the City's tree which grew under Tenorio's sidewalk, and in assuring him that the City would take care of the roots so that he could repair the sidewalk, constitute sufficient evidence of "control" of that private property, within the meaning of N.J.S.A. 59:4-1(c), to enable plaintiff to survive the City's motion for involuntary dismissal?
Relying on the Supreme Court's decision in Posey, supra, 171 N.J. 172, 793 A.2d 607, we answer that question in the affirmative. In Posey, the Supreme Court was presented with the question of whether the municipal and county defendants could face liability for injuries sustained by a twelve year old boy on private property as a result of the impact of the dangerous condition of public property.
Twelve-year old Earl Posey, Jr. was walking in the ankle deep water of a creek located in, and owned by, the Township of Bordentown when his two companions told him about the pond on the other side of the street. The pond was located on private property. In order to reach the pond, the boys were required to walk through a culvert that ran under a roadway, and which connected the creek to the deeper pond. The culvert was owned by the County. When the boys exited the culvert and entered the pond located on the private property, the water level began to rise quickly. Earl disappeared under the water, and suffered severe brain damage which ultimately led to his death.
In concluding that the municipality and the County were potentially liable under the Act, the Supreme Court pointed to the actions of the public entity defendants in causing the pond to become unnaturally and unexpectedly deep. By installing *766 storm-water drainage pipes, storm-water grates and the culvert, the public entities had created an integrated system of storm-water management. The installation of those items caused severe erosion, which in combination with the flow restriction created by the culvert, caused a pronounced increase in water velocity as the water emerged from the county-owned culvert, causing the pond on private property to be in a dangerous condition. By their actions, the public entities treated private property as if they owned it, making the private property, in effect, a part of the public property. In doing so, the public entity defendants had exercised sufficient "control" of the dangerous condition of the pond on private property within the meaning of N.J.S.A. 49:4-1(c) to have made the grant of summary judgment to the defendants improper.[5] Accordingly, in the aftermath of Posey, a public entity can be liable under the Act for a dangerous condition of private property if the activities of the public entity on its own property so impact the private property as to constitute "control" of the private property within the meaning of N.J.S.A. 59:4-1(c).
Our conclusion that a municipality is potentially liable for defects in a sidewalk appears, however, to conflict with our decisions expressly holding that because responsibility for sidewalk maintenance lay solely with the commercial landowner, a public entity has no responsibility for maintaining sidewalks in good repair. See Learn v. Perth Amboy, 245 N.J.Super. 577, 584, 586 A.2d 327 (App.Div.1991) and Christmas v. Newark, 216 N.J.Super. 393, 402, 523 A.2d 1094 (App.Div.1987), certif. denied, 108 N.J. 193, 528 A.2d 19 (1987). The trial judge in fact relied on these decisions.
We have repeatedly underscored the responsibility of a commercial landowner such as Tenorio to maintain the abutting sidewalk in safe condition, with resulting liability if that duty is breached. See Nielsen v. Lee, 355 N.J.Super. 373, 810 A.2d 600 (App.Div.2002), certif. denied, 176 N.J. 73, 819 A.2d 1188 (2003); Learn, supra, 245 N.J.Super. 577, 586 A.2d 327; Straus v. Borough of Chatham, 316 N.J.Super. 26, 719 A.2d 664 (App.Div.1998); Gaskill v. Active Envtl. Techs., Inc., 360 N.J.Super. 530, 823 A.2d 878 (App.Div.2003); Christmas, supra, 216 N.J.Super. 393, 523 A.2d 1094. Our decisions were based on Stewart v. 104 Wallace St., Inc., 87 N.J. 146, 432 A.2d 881 (1981), which is the seminal decision on the subject of a commercial landowner's responsibility to maintain the adjacent sidewalk in good condition.
It is significant that the decision in Christmas, supra, immunizing a municipality from any liability for injuries sustained on sidewalks abutting commercial property has been questioned, and indeed criticized, during the years which have elapsed since it was decided. In Levin v. Devoe, 221 N.J.Super. 61, 64 n. 1, 533 A.2d 977 (App. Div.1987), a different panel of this court noted "we disagree with the holding in Christmas v. City of Newark . . . that Stewart establishes an absolute municipal immunity for deteriorated sidewalks."
Any lingering question about whether a municipality has absolute common law immunity *767 for defective sidewalks was definitively answered in Norris v. Borough of Leonia, 160 N.J. 427, 734 A.2d 762 (1999), in which the Supreme Court determined that the Legislature did not intend to maintain the common law absolute municipal immunity for defective sidewalks when it enacted the Tort Claims Act. The court reached that conclusion because the language of N.J.S.A. 59:4-2 itself establishes only a partial and qualified immunity for dangerous conditions of public property. Id. at 440, 734 A.2d 762. "In enacting the Tort Claims Act, the Legislature may be viewed as having `interfered' with the continuation of sovereign immunity for sidewalks." Ibid. While the language of N.J.S.A. 59:4-2 "does not expressly refer to any class of public property, such as sidewalks or streets . . . [t]he statutory standard is clearly expressive of a public policy that is inconsistent with the reasons that sustained the creation of the blanket common law municipal immunity for . . . dangerous conditions of public property." Id. at 441, 734 A.2d 762.
The significance of Norris to our analysis of the decision below is this: The trial court's reliance on Christmas is misplaced, because Norris abrogated the common law immunity accorded to municipalities for negligently maintained sidewalks. Id. at 446, 734 A.2d 762. The Supreme Court determined that liability resulting from the dangerous condition of public property such as sidewalks, "must be determined in accordance with the provisions of the Tort Claims Act governing liability on the part of a municipality for its public property." Ibid.
In accordance with Norris, we analyze whether the actions of the City could be found to constitute "control" as that term is used in N.J.S.A. 59:4-1(c). Although the City of Plainfield cannot be said to have incorporated the privately-owned sidewalk into a larger municipal scheme as the public entities had done in Posey, we conclude, nonetheless, that the City's control of the sidewalk could be found by a jury to be the equivalent of treating the sidewalk as its own. We so conclude because, viewing the evidence under the standard established by Dolson, supra, 55 N.J. at 2, 258 A.2d 706, the City because of its unyielding attitude concerning its tree, could be found to have dictated how and when the sidewalk could be repaired by its owner. In effect, the City usurped control of private property under the specific facts presented. It was this usurpation that was at the heart of the Supreme Court's opinion in Posey.
Moreover, in this case, as in Posey, the public entity can be said to have derived a benefit from the control it exercised over private property; i.e. by forbidding the private owner Tenorio from cutting the roots of this 70 year old municipal tree, the municipality accomplished its objective of preserving and maintaining the beauty of the street in the historic section of Plainfield. We also find it significant that the control over private property was far more direct here than it was in Posey, where public entity action merely brought about certain changes to private property. Here, in contrast, the control is direct because a jury could find that the City had directly prohibited Tenorio from disturbing the tree roots.
Accordingly, we conclude that plaintiff had presented sufficient evidence of control of the sidewalk within the meaning of N.J.S.A. 59:4-1(c) to have survived the City's motion for involuntary dismissal at the end of her case.
We emphasize, however, as the Supreme Court did in Posey that we are not suggesting that plaintiff is entitled to judgment. We hold only that the judgment in favor of Plainfield was inappropriately *768 granted at the end of plaintiff's case. Whether a dangerous condition existed is ultimately a question for the jury. In order for plaintiff to be successful at trial, she must not only prove that the City of Plainfield did indeed prohibit Tenorio from trimming the tree roots and that such prohibition caused the sidewalk to become dangerous, but also that the resulting conditions of the sidewalk "created a foreseeable risk of the kind of injury that occurred, . . . that the condition proximately caused the injury,.. [and that] the action the entity took to protect against the [dangerous] condition or the failure to take such action was palpably unreasonable." Posey, supra, 171 N.J. at 188, 793 A.2d 607.
Whether the proofs would ultimately warrant such findings is not before us, in light of the procedural posture of this case resulting from the trial judge's ruling.
We conclude that plaintiff did present enough evidence to enable a reasonable jury to find that by forbidding Tenorio from repairing the abutting slab, the City actually controlled the sidewalk, that the uneven and disrupted sidewalk created a dangerous condition on private party, that the City knew of the condition, that an injury of the sort suffered by plaintiff was foreseeable and that the City's action in forbidding the repair by Tenorio while concurrently failing itself to trim back the tree roots was palpably unreasonable.
The Order for Judgment in favor of the City of Plainfield is reversed. The matter is remanded to the Law Division for further proceedings not inconsistent with this opinion.
NOTES
[1] Judge Collester did not participate at oral argument but with the consent of the parties, he has participated in the disposition of this appeal.
[2] John Louise, Director of the City's Department of Public Works, testified that the tree abutting the raised sidewalk slab in question did indeed belong to the City, and was at least 70 years old.
[3] The record does not indicate whether the trial proceeded against Tenorio. In any event, Tenorio is not a party to this appeal.
[4] City employee, Oscar Turk, inspected the area in front of 143 Crescent Avenue, and starting in the early 1990's issued citations for numerous violations relating to the condition of 143 Crescent Avenue, although none was for a sidewalk defect prior to the time plaintiff fell.
[5] We note in passing that the Supreme Court, two years after its decision in Posey, commented "that there is nothing novel or unusual about holding a public entity liable for foreseeable injury caused by a dangerous condition on public property even if the injury occurs off the public premises." Smith v. Fireworks by Girone, Inc., 180 N.J. 199, 213, 850 A.2d 456 (2004) (person who finds and picks up an unexploded fireworks canister at a public park and carries it to private property where it then explodes and causes injury, is entitled to recover against the public entity for the dangerous condition of the park even though the injury occurred on private property).